IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 7:16-cr-00017 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| TYLER JOHNSON | ) | United States District Judge |

**MEMORANDUM OPINION AND ORDER**

On July 20, 2020, defendant Tyler Johnson, proceeding *pro se*, filed a motion for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i). (Dkt. No. 378.) In accordance with local Standing Order 2019-1, the court appointed the Federal Public Defender (FPD) and ordered the FPD to respond within seven days with any supplemental filing. (Dkt. Nos. 379, 380.) On July 29, 2020, the FPD filed a motion for extension of time to respond and the court granted this extension. (Dkt. Nos. 383, 384.) On August 5, 2020, the FPD responded to the court's order and declined to supplement Johnson's motion. (Dkt. No. 386.) On August 12, 2020, the United States filed an opposition to Johnson's motion. (Dkt. No. 390.) Neither Johnson nor the FPD filed a reply brief, and the court finds that a hearing on the motion is not necessary. For the reasons stated below, the court will deny Johnson's motion.

I.  BACKGROUND

On August 22, 2016, Johnson pleaded guilty to one count of conspiracy to distribute fifty grams or more of methamphetamine, or five hundred grams of a substance containing a detectable amount of methamphetamine. (Dkt. Nos. 196–99.) Johnson bought methamphetamine from a distributor in California and sold the drugs to buyers in the Roanoke

area. (Dkt. No. 199.) The court sentenced Johnson to ninety months of imprisonment. (Dkt. Nos. 299, 300.)

Johnson is 25 years old and was sentenced on January 20, 2017. (Dkt. No. 378-1 at 3.) His projected release date is May 27, 2022, and he is eligible for home detention on November 27, 2021. (*Id.* at 2–3.) Johnson is being held at Allenwood Low Security Federal Correctional Institution (Allenwood Low) in Allenwood, Pennsylvania. (*Id.* at 5.)

Johnson notes that he has served nearly half of his sentence. (Dkt. No. 378 at 2.) He has completed the non-residential drug abuse program and is currently enrolled in the residential drug abuse program, which he expects to complete on December 8, 2020. He states that he has been sober for 45 months. (*Id.* at 6.) During his sentence, Johnson has completed many adult continuing education classes, participated in the suicide inmate observer program, and maintained employment with the prison. (*Id.* at 1–2.)

Johnson expresses concern about COVID-19 spreading rapidly through the prison population, particularly in low security prisons like Allenwood Low with a "dorm like environment." (*Id.* at 3–4.) He states that the "open dorm living makes it next to impossible to do social distancing." (*Id.* at 5.) He states that "half the inmates refuse to wear masks and wash their hands throughout the day," and "[e]ven staff walk around with a blatant disregard for masks and social distancing." (*Id.* at 7.)

Johnson believes that he made requests for compassionate release pursuant to 18 U.S.C. § 3582 (c)(1)(A) to both his unit team and the warden at Allenwood Low and that these requests were denied. (*Id.* at 2.) Johnson emailed the warden of Allentown Low stating that he sought relief under the "CARES Act" based on information he saw on the "inmate bulletin board." (Dkt. No. 378-1 at 7.) The warden denied Johnson's request stating, "you are not an appropriate

candidate due to your time served and your risk of recidivism." (*Id.*)  The government argues that since Johnson requested only home confinement in his email to the warden, rather than compassionate release, he has failed to exhaust his administrative remedies.[1]  (Dkt. No. 309 at 1–2.)

Johnson now requests a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), or in the alternative, release under home confinement.  (Dkt. No. 378 at 1.)  Johnson plans to live with his mother and stepfather in Salem, Virginia, if he is released.  (*Id.* at 3.)

## II.  ANALYSIS

### A.  Compassionate Release

United States Code Title 18, Section 3582(c)(1)(A), as amended by the First Step Act, provides that the court may not modify a term of imprisonment once it has been imposed except that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .

---

[1] The court will not consider Johnson's request for home confinement under the CARES Act because the Act "provides BOP with the sole authority to place an inmate on home confinement." *United States v. Oxendine*, No. 1:08CR00051-001, 2020 WL 3263955, at *2 (W.D. Va. June 17, 2020).  However, the court's opinion today does not limit Johnson's ability to appeal his request for home confinement within the BOP.

In addition to satisfying the above, the reduction must be "consistent with [the] applicable policy statement issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1). The Sentencing Commission's policy statement on compassionate release is set forth in U.S. Sentencing Guidelines § 1B1.13. The Policy provides that under § 3582(c)(1)(A), the court may reduce a term of imprisonment "if, after considering the factors set forth in 18 U.S.C. § 3553(a)," the court determines that:

> (1)(A) Extraordinary and compelling reasons warrant the reduction;
> . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. In the application notes, the Policy recognizes extraordinary and compelling reasons with regard to medical conditions (terminal illnesses or serious conditions that diminish self-care abilities), age with deterioration and significant time served, family circumstances, and other extraordinary and compelling reasons other than, or in combination with, the above reasons. U.S.S.G. § 1B1.13 n.1.

"A defendant seeking compassionate release has the burden of establishing that such relief is warranted." *United States v. Ferguson,* No. 515CR00018KDBDSC1, 2020 WL 5300874, at *2 (W.D.N.C. Sept. 4, 2020). Compassionate release is "an extraordinary and rare event." *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

## B. Exhaustion

The First Step Act modified § 3582(c)(1)(A) to allow a prisoner to bring a motion on their own behalf, but the statute still includes an exhaustion requirement. The government argues that this exhaustion requirement is mandatory and jurisdictional. (Dkt. No. 390 at 4–5.)

4

The court, however, has previously found and maintains that § 3582's exhaustion requirement is not a jurisdictional bar, but rather a claims-processing rule that may be waived. *See United States v. Brown*, Criminal No. 7:19-cr-00036, 2020 WL 4506798, at *3 (W.D. Va. Aug. 5, 2020).

Here, the government argues that Johnson failed to exhaust his administrative remedies because this is his first request for compassionate release, given that his previous requests to the Bureau of Prisons (BOP) asked only for home confinement. (Dkt. No. 390 at 4.) The court is not persuaded by this argument. "The regulation governing the form of an inmate's request for compassionate release . . . does not provide that a request must specifically use the words 'compassionate release' or 'early release' or that it must reference the applicable statute." *United States v. Carr*, 2020 WL 2847633, at *3 (W.D. Va. June 2, 2020). The court finds that the warden could have understood Johnson's email request to encompass a request for compassionate release even though it only referred to the CARES Act. *Id.* (finding the same). The CARES Act indicates "the extraordinary and compelling circumstances on which [Johnson] relies . . . [and his] email was submitted to the [w]arden as required by the statute and regulation." *Id.*

Even though the court accepts Johnson's email to the warden as a request for compassionate release, Johnson failed to appeal the warden's denial within the BOP. "The regulations adopted by the [BOP] provide that when an inmate's request under § 3582(c)(1)(A) is denied by the warden, the inmate may appeal the denial through the Administrative Remedy Procedure (ARP)." *Carr*, No. 1:13CR00034-001, 2020 WL 2847633, at *3 (citing 28 C.F.R. § 571.63(a) (2018)). "The ARP provides for an appeal by the inmate within 20 days to the appropriate Regional Director, and from there within 30 days to the General Counsel of the

5

Bureau of Prisons." *Id.* (citing 28 C.F.R. § 542.15(a)). "A denial by the General Counsel constitutes a final administrative decision." *Id.* (citing 28 C.F.R. § 571.63(b)).

Courts are split as to whether an inmate must follow this appeal procedure to exhaust their administrative remedies. Some courts have held that an inmate has exhausted his administrative remedies only after: (1) he completes the above stated appeals process; or (2) he does not receive a response from the warden and 30 days have elapsed since he sent his request. *Id.*; *United States v. Hilton*, No. 1:18CR324-1, 2020 WL 836729, at *2 (M.D.N.C. Feb. 20, 2020); *United States v. Nance*, 7:92CR00135, 2020 WL 114195, at *2 (W.D. Va. Jan. 10, 2020); *United States v. Bolino*, No. 06-CR-0806 (BMC), 2020 WL 32461, at *1–2 (E.D.N.Y. Jan. 2, 2020). Other courts interpret the statute as providing an inmate with the option to exhaust their administrative remedies through the BOP appeals process or wait 30 days from the submission of their request to file an action in federal court. *United States v. Haney*, No. 19-CR-541 (JSR), 2020 WL 1821988, at *3–4 (S.D.N.Y. Apr. 13, 2020) ("conclud[ing] that Congressional intent not only permits judicial waiver of the 30-day exhaustion period, but also, in the current extreme circumstances, actually favors such waiver, allowing courts to deal with the emergency before it is potentially too late.").

Here, the court need not resolve Johnson's case on the basis of exhaustion. Even if Johnson exhausted his administrative remedies or the court waived the exhaustion requirement, Johnson does not present extraordinary and compelling reasons to warrant compassionate release.

## C. Extraordinary and Compelling Reasons

Johnson bases his motion for release on the success of his rehabilitation and his risk of contracting COVID-19 while in custody. "In the context of the COVID-19 outbreak, courts have

6

found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at [their] prison facility." *United States v. Harper*, No. 7:18-cr-00025, 2020 WL 2046381, at *3 (W.D. Va. Apr. 28, 2020) (citing *United States v. Feiling*, Criminal No. 3:19cr112 (DJN), 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020); *United States v. Dungee*, Case No. 7:15CR00005, 2020 WL 1666470, at *2 (W.D. Va. Apr. 4, 2020)).

Here, Johnson does not present any underlying health conditions that make him particularly susceptible to contracting COVID-19. In addition, Johnson does not present any reason that he would have a particularized risk of contracting COVID-19 at Allentown Low, other than the dorm-like environment. The court "do[es] not [] minimize the risks that COVID-19 poses in the federal prison system . . . [b]ut the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The BOP is taking active steps to keep the virus out of its prison facilities. *See* Bureau of Prisons, *BOP Implementing Modified Operations*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Sept. 16, 2020).

The court takes this opportunity, however, to commend Johnson on his rehabilitation; it appears that he has made great strides in that regard. However, rehabilitation, standing alone, "shall not be considered an extraordinary and compelling reason" for a sentence modification. 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 n.3.

Therefore, the court finds that Johnson does not have extraordinary and compelling reasons to justify compassionate release.

## III.  CONCLUSION

For the reasons stated above, it is hereby ORDERED that Johnson's motion for compassionate release (Dkt. No. 378.) is DENIED.  The clerk is directed to provide a copy of this order to the defendant, all counsel of record, and the United States Probation Office.

Entered: October 26, 2020.

*/s/ Elizabeth K. Dillon*

Elizabeth K. Dillon
United States District Judge